**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

INTERDIGITAL COMMUNICATIONS, INC.,        15-cv-4485 (JGK)
ET AL.,

                                    OPINION AND ORDER

                Petitioners,

        - against -

HUAWEI INVESTMENT & HOLDING CO.,
LTD., ET AL.,

                Respondents.

---

**JOHN G. KOELTL, District Judge:**

This action arises out of an arbitration between the
petitioner, InterDigital Communications, Inc. and several
InterDigital entities (collectively "InterDigital"), and the
respondent, Huawei Investment & Holding Co. and several Huawei
entities (collectively "Huawei"). The parties spent several
years litigating and negotiating a licensing scheme for
InterDigital's patents for 3G and 4G wireless technology. In
2014, the parties agreed to submit to a binding arbitration
before an Arbitral Tribunal governed by the Rules of Arbitration
of the International Chamber of Commerce ("ICC"). Pursuant to an
Arbitration Agreement entered into by the parties, the parties'
Terms of Reference, and Joint Request for Arbitration, the
Tribunal would determine fair, reasonable, and non-
discriminatory ("FRAND") terms and conditions for a patent
license agreement between the parties. The Tribunal consisted of

1

an independent arbitrator selected by the ICC Court and two additional arbitrators, one selected by InterDigital and one selected by Huawei.

On May 22, 2015, the Tribunal issued a partial arbitration award ("Partial Award") in favor of InterDigital. On June 9, 2015, InterDigital petitioned this Court for an order confirming the Partial Award.[1] Also on June 9, 2015, Huawei filed an action in Paris, France, the seat of the arbitration, to set aside the Partial Award. On July 14, 2015, the Tribunal issued a Final Award in favor of InterDigital. On July 24, 2015, Huawei cross-petitioned this Court to stay the enforcement proceeding and to dismiss InterDigital's petition with prejudice. On August 14, 2015, InterDigital filed an amended petition, seeking an order confirming the Final Award. This Court has subject matter jurisdiction pursuant to 9 U.S.C. § 203 and 28 U.S.C. § 1332. For the reasons explained below, InterDigital's petition for an order confirming the Award is **stayed** and Huawei's cross petition to stay the enforcement proceeding is **granted.**

## I.

Unless otherwise indicated, the following facts are accepted as true for purposes of the pending petitions.

---

[1] Throughout this opinion, the Court refers to the Partial and Final Award together as the "Award."

InterDigital Communications is a Delaware corporation with its principal place of business in Pennsylvania. Yen Decl., Ex. B, at 1. The other InterDigital entities have their principal places of business in Delaware or are incorporated there. InterDigital develops technology for the wireless telecommunications industry. It is engaged in research, design, engineering and development of advanced digital wireless technologies. Id. Huawei Investment and a majority of the other Huawei entities have their principal places of business in China. Two of the Huawei entities have their principal places of business in Texas. Huawei is a global technology company that provides information and communications technology solutions. Id. at 3. Huawei sells products such as mobile phones and tablets, and other mobile devices. Id.

InterDigital is an intellectual property rights owner that has committed to certain standards-setting organizations ("SSO")[2] to grant licenses to certain patents on fair, reasonable, and

---

[2] "[S]tandard-setting organizations typically secure agreements wherein parties who contribute proprietary technology to the standard promise to license that technology on reasonable and nondiscriminatory ("RAND") terms. Absent such an agreement, the standard-setting organization will omit the technology in question from the standard. RAND licenses are thus part of a quid pro quo, representing the consideration contributing parties give to standard-setting organizations in exchange for the competitive benefits they will receive from gaining industry-wide acceptance of their preferred technologies." Lotes Co. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 400 (2d Cir. 2014)

non-discriminatory terms and conditions or to negotiate licenses
on reasonable terms free from unfair discrimination. Id. at 4.
Huawei is also a member of several SSOs. Id. Huawei and
InterDigital have been engaged in litigation related to claims
against Huawei for infringing certain InterDigital patents. Id.
at 4-5. Since 2007, Huawei and InterDigital have been
negotiating a license for InterDigital's patents that defines
the FRAND terms. Petition for Order Confirming Arbitration Award
("Petition") ¶ 8.

The parties signed an Arbitration Agreement, dated December
23, 2013. Yen Decl., Ex. A ("Agreement"). The parties agreed to
submit the patent licensing dispute to a final and binding
expedited arbitration under ICC Rules. Id. § 2. The official
situs of the arbitration was Paris, France. Id. § 5. Pursuant to
the Arbitration Agreement, each party would nominate an
arbitrator, and the two arbitrators would nominate a third
arbitrator to serve as president of the Arbitration Tribunal. In
the event the parties did not nominate an arbitrator, the ICC
would appoint the arbitrator. Id. § 7.1.

The Arbitration Agreement stipulated that New York law
would govern the interpretation of the agreement. Id. § 16. The
Agreement further stated that:

> [T]he Parties may cite law from any jurisdiction in
> their arguments to the Tribunal, but the arbitrators
> are empowered to decide FRAND terms and conditions

4

for the Completed License in light of the evidence
and arguments presented by the Parties based on a
standard of what is fair, reasonable, and non-
discriminatory.

Id. The parties consented to the non-exclusive jurisdiction of

the courts in New York:

> The Parties irrevocably consent to jurisdiction and
> venue of the state and federal courts in the State
> of New York (i) to the extent a dispute arising
> under this Agreement is not subject to the
> Arbitration or cannot be properly brought before the
> Arbitration Panel (e.g., a request for a TRO, or a
> judgment upon an arbitral award(s), which the
> Parties agree may be entered by such court), and
> (ii) such dispute can be properly brought before the
> state or federal courts in the State of New York.

The Arbitration Agreement set out instructions for the

Arbitral Tribunal with respect to the scope of the dispute and

the Tribunal's task. "[T]he Parties specifically seek a

determination by the Tribunal of FRAND royalty rates or per-unit

amounts in dispute, including the dollar value of the Initial

Royalty Payment ["IRP"] . . . as well as resolution of any

disputed contractual terms and conditions." Id. § 3.1. The

parties also submitted a Form Licensing Agreement ("FLA") to the

Tribunal that consisted of agreed terms and certain Contested

Terms. Id. § 3.2. The Tribunal was tasked with resolving the

disputes in the FLA by choosing from the competing terms the

parties provided. The parties agreed that the validity and the

interpretation of the FLA would also be governed by New York

law. FLA § 8.4.

On March 27, 2014, the parties submitted a Joint Request for Arbitration to the ICC. Haller Decl., Ex 4, ¶ 39. Judge Fidelma Macken was nominated by InterDigital to serve as one of the arbitrators, and Professor Mark Patterson was nominated by Huawei to serve as another arbitrator. Id. ¶ 40. Peter Leaver was appointed by the ICC as President or Chairman of the Tribunal. Id. ¶ 41.

The Arbitral Tribunal conducted a hearing on the merits from January 12-16, 2015. The Tribunal rendered a Partial Award on May 22, 2015. The Partial Award consisted of (1) a 70-page majority opinion, detailing the Tribunal's legal reasoning; (2) Annex 1 consisting of administrative and procedural details; (3) a table of comparable licenses in Annex 2; (4) the Tribunal's answers to the parties' letters in Annex 3; and (5) a Completed License, reflecting the Tribunal's decisions regarding the contested terms and royalty rate in the FLA. Professor Patterson dissented from the Tribunal's Partial Award. Haller Decl., Ex. 1. He determined that the appropriate FRAND analysis included elements of Huawei's and InterDigital's proposed methodologies. Id. ¶ 80.

The Partial Award was deemed final on June 9, 2015. On June 9, 2015, Interdigital filed a petition before this Court for an order confirming the Partial Award. On June 9, 2015, Huawei filed an appeal before the Cour d'Appel in Paris seeking to

vacate the Award. The Tribunal rendered a Final Award on July 14, 2015. Yen Decl., Ex. D, at 12. The Final Award awarded InterDigital an IRP and ordered Huawei to pay InterDigital this sum, including interest from June 25, 2015. Id. at 11. On July 24, 2015, Huawei cross-petitioned to stay the enforcement proceeding. Interdigital amended the petition to confirm the Partial Award on August 14, 2015, to seek confirmation and enforcement of the Final Award.

## II.

The parties agree that this proceeding is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 21 U.S.T. 2517, 330 U.N.T.S. 38, reprinted at 9 U.S.C. § 201. The Award arises out of a commercial relationship between a domestic corporation, InterDigital, and a foreign corporation, Huawei, in an international arbitration proceeding that was conducted abroad under ICC Rules and contemplates performance outside the United States. The Award is thus, a foreign arbitral award in the United States. See 9 U.S.C. § 202.

"Under the Convention, 'the country in which, or under the [arbitration] law of which, [an] award was made' is said to have primary jurisdiction over the arbitration award. All other signatory States are *secondary* jurisdictions, in which parties

can only contest whether that State should enforce the arbitral award." Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Karaha Bodas I"), 335 F.3d 357, 364 (5th Cir. 2003) (quoting New York Convention, art. V(1)(e)); Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Karaha Bodas II"), 500 F.3d 111, 115 n.1 (2d Cir. 2007). Courts of secondary jurisdiction tasked with determining whether to grant or refuse enforcement are limited to the specific grounds to refuse enforcement that are enumerated in Article V of the New York Convention. See Karaha Bodas II, 500 F.3d at 115 n.1. The courts of the country of the arbitral situs are courts of primary jurisdiction and have broader discretion to set aside the award. Id.

The courts of the country in which or under whose law the arbitration award was made have primary jurisdiction to determine the enforceability of the arbitration award. See New York Convention, art. V(1)(e); Karaha Bodas II, 500 F.3d at 115 n.1. Although the choice of law provision in the Arbitration Agreement stipulates that New York law governs, the choice of law provision applies only to the interpretation of the Arbitration Agreement and the FLA. The substantive law of the arbitration, the law under which the Tribunal determined what royalty rate was FRAND, not New York law, and the parties agreed to cite to law from any jurisdiction. Agreement § 16. Because

8

Paris is the situs or seat of the arbitration, the French courts, have primary jurisdiction to vacate the arbitral award. See Karaha Bodas II, 500 F.3d at 115 n.1. Huawei has sought annulment of the Award in France. The New York courts have secondary jurisdiction, and the parties may only contest whether the United States should enforce the arbitration award. See id.; Karaha Bodas I, 335 F.3d at 364; CBF Industria de Gusa S/A/ v. AMCI Holdings, Inc., 14 F. Supp. 3d 463, 473-74 (S.D.N.Y. 2014). One basis for refusing to enforce an arbitration award under Article V is that the award has been set aside or suspended by a competent authority of the country in which or under the law of which, the award was made. New York Convention, art. V(1)(e).

### III.
### A.

The preliminary question is whether this Court should stay consideration of InterDigital's petition to enforce the Award pending a decision by the Paris Court on Huawei's action to annul the Award. On June 9, 2015, after the Partial Award was rendered in Paris and before the Tribunal issued the Final Award, Huawei initiated an annulment proceeding before the Paris Cour d'Appel ("Annulment Action"). Haller Decl., Ex. 46. The same day, InterDigital filed this action in this Court to enforce the Award (the "Enforcement Action"). On July 25, 2015, Huawei moved to stay the Enforcement Action in this Court

pending a decision in the Annulment Action. A hearing before the Cour d'Appel is scheduled for March 8, 2016. Haller Decl., Ex. 50.

The decision on whether to stay an enforcement proceeding is a matter that lies in the court's discretion where an application has been made in the originating country to have the arbitration award set aside or suspended. Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 316 (2d Cir. 1998). The New York Convention provides:

> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V (1)(e), [namely, the country in which or under the law of which, that award was made] the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

New York Convention, art. VI. The Court of Appeals for the Second Circuit has noted the inherent tension between the arbitration goals of expedition and economy and granting a stay of an enforcement proceeding because a stay "impedes . . . the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." Europcar, 156 F.3d at 317. "[W]hile an adjournment is appropriate in certain situations, a district court should not automatically stay enforcement proceedings on the ground that parallel proceedings are pending

in the originating country." <u>Nedagro B.V. v. Zao Konversbank</u>,
No. 02-cv-3946 (HB), 2003 WL 151997, at *6 (S.D.N.Y. Jan. 21,
2003). But "where there is a parallel annulment proceeding in the
originating country and there is a possibility the award will be
set aside, a district court may be acting improvidently by
enforcing the award prior to the completion of the foreign
proceedings." <u>Europcar</u>, 156 F.3d at 317.

Moreover, "[t]he limited scope of review allowed under
[Article V of] the Convention also favors deference to
proceedings in the originating country that involve less
deferential standards of review on the premise that, under these
circumstances, a foreign court well-versed in its own law is
better suited to determine the validity of the award." <u>Europcar</u>,
156 F.3d at 317. The scope of review of the Award in France, the
originating country, is broader than the review available in the
United States. While this Court would be limited to the grounds
specified in Article V of the New York Convention as grounds to
refuse to enforce the Award, the court in France as the court of
the originating country could also rely on its local law to set
aside the Award. <u>See</u> <u>Karaha Bodas II</u>, 500 F.3d at 115 n.1.

The Court of Appeals has articulated several, non-exclusive
factors to consider in determining whether a stay is
appropriate:

11

(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

(5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country, . . .; and

(6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

Id. at 317-18 (internal citations omitted). "[T]he first and second factors on the list should weigh more heavily in the district court's determination." Id. at 318. Huawei contends that its motion to stay the Enforcement Action satisfies each of these factors.

**B.**

On balance, the above-cited factors tip decidedly in favor of staying this enforcement proceeding to await the outcome of the proceeding in France to annul the Award. Little delay will result from awaiting a decision in the French Annulment Action and deferring a decision in this proceeding may avoid inconsistent results.

InterDigital does not dispute that Huawei has moved to set aside the Award or that the French courts are a "competent authority" under Article VI of the Convention. It is within a district court's discretion to adjourn an enforcement proceeding until the competent authority decides the validity of an arbitration award. See Spier v. Calzaturifificio Tecnica S.p.A., 663 F. Supp. 871, 875 (S.D.N.Y. 1987) (adjourning a decision on enforcement pending the resolution of a challenge to the award in Italy where the award was rendered); Fertilizer Corp. of India v. IDI Mgmt., Inc., 517 F. Supp. 948, 950, 962 (S.D. Ohio 1981) (staying an action to enforce an award issued in India where the parties to the arbitration had filed an action in the Indian courts to vacate or enforce the award).

With respect to the first Europcar factor, the general objectives of arbitration and speedy resolution of disputes, weighs in favor of the stay. The Cour d'Appel in Paris will hold a hearing on Huawei's Annulment Action in a few weeks on March

8, 2016. Haller Decl., Ex. 50. According to Huawei, a decision is expected approximately four to six weeks after the hearing. Haller Decl. ¶ 50. While that proceeding could be delayed, there would assuredly be duplication and delay from pursuing this enforcement proceeding. Whatever result this Court reached on the merits would be subject to appeal with the associated delay and expense. It would be unlikely that Huawei would choose to forego its ability to continue with the French litigation in the courts of the originating country. Indeed, the proceedings would likely drag on even further than the FLA which expires in 2016. See Award ¶ 136. Plainly, the way to avoid duplication is to await the decision of the French courts as to whether the Award should be annulled. If they determine that the Award should be annulled, that would be a basis for refusing to enforce the Award in this Court. See New York Convention, art. V(1)(e). If they decide that there is no basis to annul the Award, their decision would be, at the least, an important factor for this Court to consider if Huawei still opposed enforcement of the Award.[3]

_____

[3] Interdigital points to the fact that the Arbitration Agreement provided for a non-exclusive forum in New York for the enforcement of any arbitral award. But this provision was not exclusive and it did not prevent an annulment proceeding from being brought in France. Moreover, it did not transform New York into a primary jurisdiction under the New York Convention because the arbitration was not held in New York and the law that the arbitrators applied was not New York law but rather FRAND and the parties could cite to law from any jurisdiction.

A stay avoids the possibility of inconsistent results between this Court's determination on enforcement and the Paris court's decision on whether to vacate the Award. District courts facing similar facts have opted to stay proceedings in enforcement actions until the resolution of a proceeding to set aside an award in the originating country. See, e.g., Berkenhoff GmbH v. Glob. Trade Network, Inc., No. 11-cv-00475, 2012 WL 274037, at *2 (S.D. Oh. Jan. 31, 2012) ("The Court agrees that in order to avoid an inconsistent result, the interest of justice mandate that it stay its decision on the enforcement of the arbitral award in the United States until after such time the German Court system has concluded its review."); Higgins v. SPX Corp., No. 05-cv-846, 2006 WL 1008677, at *4 (W.D. Mich. Apr. 18, 2006) ("[C]omity and efficient use of judicial resources does strongly favor staying this action to await the decision of the Brazilian courts as to the nullification action."); Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp., No. 05-cv-0423, 2005 WL 3533128, at *3 (W.D. Pa. Dec. 22, 2005) ("We find that although causing an immediate delay, this course of action will actually serve the objectives of resolving disputes expeditiously and avoiding protracted and expensive litigation. The delay that will be caused immediately is likely shorter than the possible delay that would occur if this court were to confirm the award and the French court then set it

15

aside. More expensive litigation involving more complex issues
would result from such a situation."); <u>Alto Mar Girassol v.</u>
<u>Lumbermens Mut. Cas. Co.</u>, No. 04-cv-7731, 2005 WL 947126, at *4
(N.D. Ill. Apr. 12, 2005) ("While a stay will cause an immediate
delay in the resolution of the dispute, this delay is likely
shorter than the possible delay that would occur if this Court
confirms the award and the French court ultimately sets the
award aside resulting in further litigation likely involving
more complex issues. Waiting for the French court to rule will
also likely aid in the avoidance of more expensive additional
litigation that could arise."); <u>Spier</u>, 663 F. Supp. at 875
("[I]t is better to permit the validity of this Italian arbitral
award to be first tested under Italian law by Italian courts.").

Moreover, the second factor, the status of the foreign
proceedings, weighs in favor of a stay. Both the Enforcement
Action and Annulment Action were initiated on the same day.
Huawei acted promptly to have the Award annulled. Huawei's
prompt action in Paris has resulted in a situation where there
is likely to be a prompt decision by the Cour d'Appel without
any inordinate delay.

The third factor, whether the award will receive greater
scrutiny in foreign proceedings, weighs somewhat in favor of
staying this Enforcement Action. Paris is the seat of the
arbitration, and therefore a primary jurisdiction under the New

York Convention. The French courts can apply the specific grounds for refusing to enforce the Award found in Article V of the Convention, and can also rely on any relevant provisions of local law. This Court would be limited to the grounds in Article V. See Karaha Bodas II, 500 F.3d at 115 n.1 ("Consequently, even though courts of a *primary* jurisdiction may apply their own domestic law when evaluating an attempt to annul or set aside an arbitral award, courts in countries of *secondary* jurisdiction may refuse enforcement only on the limited grounds specified in Article V."). In the Annulment Proceeding, Huawei largely relied on the same grounds that it has asserted in this Court to resist enforcement of the Award, but it has also relied to a minor degree on a provision of French law that would not be available in this proceeding. See Haller Decl., Ex. 55, at 24-26.

With respect to the fourth factor, the type of foreign proceeding, Huawei's proceeding in France is an action to vacate an award which is normally not preferred over an action to enforce an award. However, there is no evidence that Huawei's Annulment Action is intended to hinder or delay resolution, is frivolous, or is an abusive tactic by Huawei to forestall the resolution of the licensing dispute. The fourth Europcar factor reflects the concern that stays should not be used to delay resolution unnecessarily. See Spier, 663 F. Supp. at 875; Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum

Corp., No. 90-cv-4169 (JFK), 1990 WL 213030, at *7 (S.D.N.Y.
Dec. 18, 1990). Cognizant that "[a] stay of confirmation should
not be lightly granted lest it encourage abusive tactics by the
party that lost in arbitration," a stay is appropriate in this
case to avoid the possibility of inconsistent results between
this Court's determination on enforcement and the Paris Court's
decision on vacatur. See Europcar, 156 F.3d at 317.

With respect to the fifth factor, the balance of hardships,
and the sixth factor, other significant circumstances that
should be considered, it is plain that InterDigital has a
significant interest in the prompt enforcement of the Award
which provides it with substantial, immediate monetary relief.
InterDigital points out that Huawei refuses to comply with the
terms of the Arbitration Agreement and has not made the required
IRP. Pursuant to the Arbitration Agreement, Huawei agreed to pay
the IRP at least within 30 days of the Final Award. Agreement
§ 9(b). Huawei has indicated it will not pay the IRP while the
Annulment Action is pending in Paris. Huawei offered
InterDigital an interim payment consisting of the amount the
dissenting arbitrator, Professor Patterson, concluded was
appropriate. Haller Decl. ¶ 52; Haller Decl., Ex. 53.
InterDigital rejected the offer because the offer required the
parties to agree to suspend enforcement efforts pending
resolution of the French Annulment Action. Haller Decl., Ex. 52.

Both parties can be protected by an order that Huawei post security pursuant to Article VI of the New York Convention in the amount of the Final Award together with interest to date. See Spier, 663 F. Supp. at 876.

<strong>CONCLUSION</strong>

For the reasons stated above, Huawei's motion to stay this enforcement proceeding is granted, and the motion to confirm the Award is stayed. To the extent not specifically addressed above, the parties' arguments are either moot or without merit. The parties are directed to provide this Court with letter briefs by February 29, 2016, addressing the issue of the amount and type of security. Responsive briefs may be filed by March 4, 2016. The stay is subject to revision should circumstances change. InterDigital can renew its petition for an order confirming the Award after the outcome of the French proceedings is determined. The Clerk is directed to close all pending motions.

**SO ORDERED.**

**Dated:    New York, New York**
**          FEBRUARY 17, 2016**

                              _____/s/_____

                                   **John G. Koeltl**
                              **United States District Judge**